**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

JOSEPH R. SLIGHTS III
VICE CHANCELLOR

417 S. State Street
Dover, Delaware 19901
Telephone: (302) 739-4397
Facsimile: (302) 739-6179

Date Submitted: May 28, 2020
Date Decided: June 22, 2020

Paul J. Lockwood, Esquire
Nicole A. DiSalvo, Esquire
Skadden, Arps, Slate, Meagher & Flom LLP
920 North King Street
Wilmington, DE 19801

David E. Ross, Esquire
R. Garrett Rice, Esquire
Ross Aronstam & Moritz LLP
100 S. West Street, Suite 400
Wilmington, DE 19801

Thomas G. Macauley, Esquire
Macauley LLC
300 Delaware Avenue, Suite 1018
Wilmington, DE 19801

Rolin P. Bissell, Esquire
James M. Yoch, Esquire
Young Conaway Stargatt & Taylor, LLP
1000 North King Street
Wilmington, DE 19801

Re: *PPL Corporation, et al. v. Riverstone Holdings LLC, et al.*
C.A. No. 2018-0868-JRS

Dear Counsel:

This is round two of dispositive motion practice before this Court relating to a multi-fora dispute arising, initially, from a sale of certain hydroelectric assets located principally in Montana. The Court has described this transaction, the related transactions and the parties' broad ranging disputes in its Memorandum Opinion

addressing a motion to stay this Delaware litigation in favor of litigation that was pending in Montana (the "Opinion").[1] I'll not repeat those details here. In this round, Defendants, Talen Energy Corporation ("Talen"), Talen Energy Holdings, Inc. ("Talen Energy Holdings"), Talen Energy Supply, LLC ("Talen Energy Supply") and Talen Montana, LLC ("Talen Montana"),[2] have moved to dismiss Counts I–V of Plaintiffs' Second Amended and Supplemental Verified Complaint (the "Complaint") pursuant to Court of Chancery Rule 12(b)(1) (the "Motion") on mootness grounds.[3]

---

[1] *PPL Corp. v. Riverstone Hldgs.*, 2019 WL 5423306 (Del. Ch. Oct. 23, 2019) (denying motion to dismiss or stay and finding that several of the claims pled by Plaintiffs state viable claims). I use the same conventions and definitions here as were used in the Opinion.

[2] For ease of reference, I will refer to the principal actor on behalf of Talen, Talen Energy Holdings, Talen Energy Supply and Talen Montana, collectively, as "Riverstone" because Defendant, Riverstone Holdings LLC, is alleged to own and control these Defendants. Compl. ¶¶ 24–31.

[3] *See* Second Am. and Supplemental Verified Compl. ("Compl.") (D.I. 28); Motion (D.I. 69). Here, I use the term "Plaintiffs" as it is used in the Complaint to refer to PPL Corporation, PPL Capital Funding, Inc., PPL Electric Utilities Corporation, PPL Energy Funding Corporation, Paul A. Farr, Mark F. Wilten, Peter J. Simonich, William H. Spence, Rodney C. Adkins, Frederick M. Bernthal, John W. Conway, Philip G. Cox, Steven G. Elliot, Louise K. Goeser, Stuart E. Graham, Stuart Heydt, Raja Rajamannar, Craig A. Rogerson, Natica Von Althann, Keith H. Williamson and Armando Zagalo De Lima. Compl. at 1. I will also adopt the convention used in the

In the Motion, Riverstone argues the Court lacks subject matter jurisdiction over Counts II–V of the Complaint because those claims are now moot following certain events that have occurred in Montana since the Opinion issued. [4] As Riverstone reads Counts II–V, they are requests for declaratory judgments meant to prevent Riverstone from prosecuting related actions pending in Montana state courts. By Riverstone's lights, that relief is no longer necessary or appropriate. One of the Montana actions has been dismissed, as memorialized by a now final, non-appealable judgment. As for the other action, Riverstone maintains PPL cannot obtain a declaration from this Court that would in any way be binding upon the only remaining plaintiff in that action. [5] Thus, Riverstone argues, because the declarations

---

Complaint and refer to the principal actor on Plaintiffs' behalf as "PPL." *See, e.g.*, Compl. ¶ 5.

[4] The Talen Parties' Opening Br. in Supp. of Their Mot. to Dismiss Counts I–V of Pls.' Second Am. and Supplemental Verified Compl. pursuant to Ct. Ch. R. 12(b)(1) ("DOB") (D.I. 69) at 1–3. In their briefing on the Motion, Riverstone dropped its challenge to Count I. *See* The Talen Parties' Reply Br. in Further Supp. of Their Mot. to Dismiss Counts I–V of Pls.' Second Am. and Supplemental Verified Compl. pursuant to Ct. Ch. R. 12(b)(1) ("DRB") (D.I. 75) at 2 n.2. Thus, the Motion now targets only Counts II–V.

[5] DRB at 2.

sought in Counts II–V are no longer justiciable, the Court lacks subject matter jurisdiction to adjudicate those claims.

Given the fact-intensive nature of a proper mootness inquiry, I am satisfied Riverstone's Motion comes too soon. The proceedings here and in Montana are fluid and this dynamic does not allow for a determination, at this stage, that PPL's requested declarations in Counts II–V are moot as a matter of law. For this reason, and others I explain in more detail below, the Motion must be denied.

## I. BACKGROUND

According to Riverstone, one of the two parallel Montana actions, the so-called "Lewis & Clark Action," has been dismissed on *forum non conveniens* grounds. Riverstone represents that it will take no appeal of that dismissal, nor will it attempt to prosecute those claims elsewhere.[6] Thus, says Riverstone, PPL's claims in Delaware that sought to prevent Riverstone from prosecuting the Lewis & Clark Action in violation of a contractual forum selection clause are now moot.[7]

---

[6] DOB at 8.

[7] *Id.*; DOB Ex. A (Order on Motion to Dismiss dated December 4, 2019), Ex. B (Notice of Entry of Judgment dated December 26, 2019).

Riverstone also argues that the only remaining active case in Montana, the so-called "Rosebud Action," has been realigned such that Riverstone is no longer prosecuting that action. Rather, an unaffiliated entity, non-party, Talen Montana Retirement Plan (the "Plan"), is now alone in prosecuting those claims.[8] For context, at the time the Complaint was filed here, the plaintiffs in the Rosebud Action were Talen Energy Marketing (a Riverstone subsidiary) and the Plan.[9] But the parties have since been realigned such that the Plan is the sole remaining plaintiff.[10]

With the realignment in the Rosebud Action now complete, Riverstone argues that any legal declarations or relevant findings of fact PPL seeks from this Court would have no practical effect on the Plan.[11] This is because the Plan "is independent and not an affiliate of . . . Talen Montana[] and not bound by

---

[8] Compl. ¶ 120; DOB at 8.

[9] Compl. ¶¶ 9, 120.

[10] DOB at 8; DOB Ex. C (Second Amended Complaint filed in *Talen Montana Retirement Plan v. PPL Corp. et al.*, Cause No. DV-18-56).

[11] DOB at 13.

litigation against" Talen Montana.[12]  There is, therefore, no justiciable case or controversy as to Counts II–V, and the claims must be dismissed under Court of Chancery Rule 12(b)(1).[13]

Turning to the claims asserted here, while portions of Counts II–V are aimed squarely at the Lewis & Clark Action (which, as noted, has been dismissed on *forum non conveniens* grounds in favor of this Action), other aspects of Counts II–V address matters beyond those raised in Lewis & Clark.[14]  For example, Count II asks the Court to declare that claims in the Rosebud Action are barred "[t]o the extent that the relief sought in [that] action is premised on the allegation that the assets contributed by PPL in the Spin as Energy Supply Assets . . . were insufficient to support the Energy Supply Business."[15]  Count II also seeks a declaration that

---

[12] *Id.* at 13.

[13] Ct. Ch. R. 12(b)(1).

[14] *See* PAB Ex. 1 at 11 (dismissing claims in the Lewis & Clark Action in favor of this Action because "[p]roceedings in two jurisdictions addressing the same legal issues does not comport with traditional due process notions").

[15] Compl. ¶ 45.

Riverstone may not "directly or indirectly" recover certain assets covered by Section 1.04 of the Separation Agreement.[16] Counts III–V seek declarations that PPL Montana was "solvent and adequately capitalized with sufficient liquidity" at "all relevant times" (the "Capitalization Declarations").[17]

## II. ANALYSIS

"Because the requirement of an actual controversy goes directly to the court's subject matter jurisdiction over an action, a motion to dismiss based" on mootness is properly examined under Rule 12(b)(1).[18] Plaintiffs have the burden of pleading facts sufficient to establish the Court's subject matter jurisdiction.[19] When determining whether they have carried this burden, "the Court should accept the

---

[16] Compl. ¶ 146.

[17] Compl. ¶¶ 153, 162, 169.

[18] *Nama Hldgs., LLC v. Related World Mkt. Ctr., LLC*, 922 A.2d 417, 435 n.43 (Del. Ch. 2007) (citing Ct. Ch. R. 12(b)(1)).

[19] *AIU Ins. Co. v. Philips Elecs. N. Am. Corp.*, 2018 WL 367849, at *5 (Del. Ch. Jan. 11, 2018).

material factual allegations in the complaint as true, and all inferences therefrom should be construed in the non-moving party's favor."[20]

"The doctrine of mootness requires a court to dismiss a claim if the substance of the dispute disappears due to the occurrence of certain events following the filing of an action."[21] A dispute is moot only if a grant of relief "cannot have any practical effect on the existing controversy."[22] Given its practical roots, "mootness is fundamentally a matter of degree; there is no precise test for ascertaining with precision whether a particular claim has become moot. . . . Such a determination therefore becomes an intensely factual inquiry, guided primarily by pragmatic

---

[20] *de Alder v. Upper N.Y. Inv. Co. LLC*, 2013 WL 5874645, at *7 (Del. Ch. Oct. 31, 2013) (internal quotations and citations omitted).

[21] *Nama Hldgs.*, 922 A.2d at 435 (internal quotation omitted).

[22] *Id.* (internal quotation omitted).

considerations."[23]  "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot."[24]

Pursuant to our Declaratory Judgment Act, Delaware courts have the power "to declare rights, status and other legal relations whether or not further relief is or could be claimed."[25]  The purpose of the Act is "to provide parties whose legitimate interests are cast into doubt by the assertion or threat of assertion of adverse claims."[26]  Accordingly, this Court has subject matter jurisdiction over claims that:

> (1) . . . involv[e] the rights or other legal relations of the party seeking declaratory relief; (2) . . . in which the claim of right or other legal interest is asserted against one who has an interest in contesting the

---

[23] *Int'l Bhd. of Boilermakers v. Kelly*, 815 F.2d 912, 915 (3d Cir.1987) (internal quotations omitted); *Energy P'rs, Ltd. v. Stone Energy Corp.*, 2006 WL 2947483, at *6 (Del. Ch. Oct. 11, 2006) ("Even though the Delaware Constitution does not have a direct analog to Article III's 'case or controversy' requirement, the analysis is generally the same" in Delaware as it is in federal courts.).

[24] *Manker v. Spencer*, 2019 WL 5846828, at *10 (D. Conn. Nov. 7, 2019) (internal quotation omitted).

[25] 10 *Del. C.* § 6501.

[26] *K&K Screw Prods., L.L.C. v. Emerick Capital Inv.*, 2011 WL 3505354, at *7 (Del. Ch. Aug. 9, 2011).

claim; (3) . . . between parties whose interests are real and adverse; [and] (4) [that involves an] issue . . . ripe for judicial determination.[27]

As a matter of hornbook law, "a judgment may carry indirect consequences in addition to its direct force, either as a matter of legal rules or as a matter of practical effect."[28] Because it is "a peculiarly fact-intensive exercise" to decide whether a contest is moot, a court should not dismiss claims unless it is certain they could have no "practical effect" on the parties if adjudicated.[29] In the absence of such certainty, it would be "flawed and premature" to dismiss claims at an early stage of litigation before the parties have had an opportunity to develop a factual record.[30] And, while "an understanding of the merits of [a] dispute [may] inform[] the mootness analysis,"

---

[27] *K&K Screw Prods.*, 2011 WL 3505354, at *7 (alterations in original; citation omitted).

[28] 13C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 3533.3.1 (3d ed. 2020).

[29] *Vestcom Int'l, Inc. v. Chopra*, 114 F. Supp. 2d 292, 299 (D.N.J. 2000) (citation omitted); *Nama Hldgs.*, 922 A.2d at 435.

[30] *Nama Hldgs.*, 922 A.2d at 435.

> [i]t is important to remember that, as with other justiciability doctrines, mootness should not be confused with the merits. An argument that an action is moot because the plaintiff is not entitled to the requested relief . . . is no more than an argument on the merits that should be decided on the merits.[31]

After giving PPL the benefit of all reasonable inferences flowing from the facts pled in the Complaint, I am satisfied that PPL has carried its burden, at this stage, of establishing the Court's subject matter jurisdiction over Counts II–V.

As I held in the Opinion, PPL has well pled that Riverstone is presently engaged in an elaborate scheme to avoid contractual liability under the Separation Agreement by causing the Rosebud Action to be prosecuted.[32] More specifically, PPL has stated viable claims that the Rosebud Action is "nothing more than an attempt by Riverstone to hold PPL responsible for liabilities [Riverstone] expressly

---

[31] *Intrepid Invs., LLC v. Selling Source, LLC*, 2015 WL 6157318, at *5 n.32 (Del. Ch. Oct. 25, 2015); 13B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 3533.1 (3d ed. 2020).

[32] Compl. ¶¶ 116–17 ("Riverstone has caused two lawsuits to be filed against [PPL] in Montana state court" to "compel [PPL] to pay Talen Montana's debts."), ¶ 124 ("The claims asserted in . . . the Rosebud Action constitute Energy Supply Liabilities, as defined in Sections 2.03 and 11.01 of the Separation Agreement."); *PPL Corp.*, 2019 WL 5423306, at *5.

assumed" under the Separation Agreement.[33]  Nothing would suggest that Delaware

is an improper forum for this dispute.  Indeed, Delaware is the contractually-chosen

forum for disputes arising out of the Separation Agreement.[34]  Moreover, it was

Riverstone, not PPL, that initiated the parties' multi-front legal battles when it

"caused" the Montana suits to be filed.[35]

The claims remaining in the Rosebud Action involve multiple serious

allegations against PPL—including a claim that it attempted fraudulently to transfer

assets to defraud a class of Talen Montana's creditors.[36]  In the face of such serious

allegations, PPL seeks declarations from the Court that would definitively contradict

what it believes are false claims Riverstone has asserted in the past and, from PPL's

perspective, continues to advance, albeit indirectly, in the Rosebud Action.[37]

---

[33] *PPL Corp.*, 2019 WL 5423306, at *5.

[34] *Id.*, at *1.

[35] Compl. ¶ 117.

[36] Compl. ¶ 122.

[37] *See Sanborn v. Geico Gen. Ins. Co.*, 2016 WL 520010, at *10 (Del. Super. Ct. Feb. 1, 2016) ("A plaintiff's claim will not be considered moot when a defendant 'continues to defend the legality of its actions, making it not clear why the [defendant] would necessarily

Against the backdrop of PPL's baseline interest in clearing its name, at this stage of the proceedings, it is premature to declare that adjudicating Counts II–V could have no practical consequences. For example, without providing an exhaustive list, addressing Counts II–V in Delaware could have the following "practical effect[s] on the existing controversy":[38]

- - As I recognized in the Opinion, one of PPL's purposes in this Action is to obtain "some sort of declaration . . . that can then be used in [a] . . . preclusive way in Montana."[39] At this juncture, it is uncertain how the claims in Delaware and Montana will evolve—rendering it impossible to determine the preclusive effect of my judgments in this Action. Given PPL's express litigation strategy (which may or may not prove successful), I am satisfied the parties possess a real and adverse interest in litigating Counts II–V.[40]

refrain from [the same conduct] in the future.'") (alterations in original; citation omitted); Compl. ¶ 143 (Count II seeking a declaration that certain relief in the Rosebud Action is "barred" by Section 1.04 of the Separation Agreement), ¶¶ 153, 162, 169 (the Capitalization Declarations).

[38] *Nama Hldgs.*, 922 A.2d at 435 (internal quotation omitted).

[39] *PPL Corp.*, 2019 WL 5423306, at *7 n.116.

[40] *See, e.g.*, Compl. ¶ 146 (Count II seeking a declaration that Riverstone may not "directly or indirectly" recover the proceeds from the sale of the hydroelectric facilities"), ¶¶ 153, 162, 169 (the Capitalization Declarations). In this regard, I gather the parties have identified a circuit split regarding whether (or not) any determinations I make in this Action could be binding on the Plan because it is unclear whether the Plan is an "affiliate" of Riverstone. *See* Telephonic Oral Arg. on the Talen Parties' Mot. to Dismiss Counts I–V

- Count II seeks a declaration that Riverstone may not recover the proceeds from the sale of the hydroelectric facilities "directly or indirectly."[41]  PPL maintains the Rosebud Action is an indirect attempt by Riverstone to recover these proceeds.[42]  Accordingly, even without delving into the issue of whether the Plan is a Riverstone "affiliate," a ruling in PPL's favor on Count II could have a practical effect on the parties.  For example, the Riverstone subsidiary, Talen Energy Marketing, could be barred from participating in any class recovery in the Rosebud Action.

- In the Complaint, PPL seeks damages, costs, expenses and attorneys' fees incurred in this Action as well as both Montana actions.[43]  Even though the Lewis & Clark Action has been dismissed, PPL may still be entitled to damages for having to defend itself in Montana in breach of

---

of Pls.' Second Am. and Supplemental Verified Compl. Pursuant to Ct. Ch. R. 12(b)(1) at 44 (discussing *Rothstein v. Am. Int'l Gp., Inc.*, 837 F.3d 195, 207 (2d Cir. 2016) (holding that a company's ERISA plan was not an "affiliate" of the company); and *In re Motorola Securities Litig.*, 644 F.3d 511 (7th Cir. 2011) (holding that a company's 401(k) plan was an "affiliate" of the company)).  Even if the Court eventually must address the merits of the issue that divided the courts in *Rothstein* and *Motorola*, a Motion under Rule 12(b)(1) on mootness grounds is not the appropriate procedural vehicle to tee up that issue. "Mootness should not be confused with the merits."  13B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 3533.1 (3d ed. 2020).

[41] Compl. ¶ 146.

[42] Compl. ¶ 124; Pls.' Answering Br. in Opp'n to the Talen Parties' Mot. to Dismiss Counts I–V of the Second Am. Compl. ("PAB") (D.I. 73) at 26.

[43] Compl. at 62 (Prayer For Relief).

the Separation Agreement.[44] Given the still-developing nature of the claims in this Action, it does not plainly appear that a judgment in PPL's favor on Counts II–V would have no bearing on the extent of PPL's damages.

- Delaware courts have held that where a "dispute will likely recur" absent "a definitive judicial construction" of a contract, a dispute is not moot.[45] One of PPL's central allegations in the Complaint is that Riverstone is attempting to craft creative ways around commitments it made in the Separation Agreement.[46] Indeed, PPL has pled that Riverstone "caused" the Lewis & Clark and Rosebud Actions to be filed in an effort to undermine that contract.[47] Riverstone can point to no legal requirement that PPL accept its promise "not to prosecute [the Lewis & Clark] claims in any other court."[48] When considered in the context of what PPL sees as Riverstone's "gamesmanship," I am persuaded that absent a definitive construction of the Separation Agreement, the parties' disputes may "recur."[49]

---

[44] *See Martin v. Am. Potash & Chem. Corp.*, 92 A.2d 295, 298 (Del. 1952) (appeal not moot where plaintiffs remained potentially entitled to monetary damages, notwithstanding that equitable relief was no longer available: "it does not plainly appear that the controversy has come to an end") (internal quotation omitted).

[45] *AIU Ins.*, 2018 WL 367849, at *7.

[46] *See, e.g.*, Compl. ¶¶ 6–7 (alleging Riverstone has "tried" to "abdicate to PPL responsibility for the consequences of Riverstone's choices").

[47] Compl. ¶¶ 9–10 ("Riverstone caused these claims to be lodged"), ¶ 121 (alleging "both named plaintiffs in the Rosebud Action are controlled by Talen and, thus, Riverstone.").

[48] DRB at 1.

[49] Compl. ¶ 13.

- The Capitalization Declarations are closely related to PPL's Count VIII (which Riverstone does not ask the Court to dismiss) for Tortious Interference.[50] In light of the fact that Count VIII will remain and the parties will continue to dispute PPL Montana's solvency, Riverstone has not demonstrated that dismissing Counts III–V will meaningfully narrow the parties' disputes.[51] Accordingly, even if it were appropriate to undertake a searching, dispositive analysis at this stage of the extent to which the Plan could be bound by this Court's determinations (a proposition I do not endorse), such an exercise would have limited practical benefits for the parties.

For the foregoing reasons, the Motion is DENIED.

**IT IS SO ORDERED.**

Very truly yours,

*/s/ Joseph R. Slights III*

---

[50] Compl. ¶¶ 153, 162, 169, 194–200. Count VIII encompasses PPL's allegation that Riverstone "intentionally caused its subsidiaries to render Talen Montana insolvent" and then filed the Montana Actions wrongfully to "extract money from PPL." *PPL Corp.*, 2019 WL 5423306, at *13; Compl. ¶ 198.

[51] DOB at 2. In its Reply Brief, Riverstone asserts that PPL Montana's post-Spin solvency could not be relevant to Count III. This argument ignores that, in the Opinion, I based my finding that PPL had well pled bad faith (a prerequisite for holding a parent entity liable for tortious interference when a subsidiary breaches a contract) upon the allegation that "Riverstone intentionally caused its subsidiaries to render Talen Montana insolvent." *PPL Corp.*, 2019 WL 5423306, at *13. Accordingly, given the early stage of these proceedings, I disagree with Riverstone's argument that PPL Montana's post-Spin solvency is "moot in this lawsuit." DRB at 24. It would be premature to make such a determination.